Good morning, Your Honors, and may it please the Court, my name is Mary Schultz on behalf of Brad Edwards. We are asking that the holding that emanates from this case and this Court in this instance is that it is not a benefit if you have to execute a release of claims to get it. It is not an employee benefit plan if one has to do a release of claims to realize the result. And that is the primary distinction between this case and the entire body of precedent that this Court, this panel has been presented with in ERISA cases. If one must execute a release of claims to get a sum paid, that is a settlement of claims, not a benefit plan. ERISA is concerned about fiduciary duty. That's the entire body of ERISA precedent. We're concerned about the employer's... Whether it's an administrative plan, whenever people have some arguable disagreement about how much one is entitled to from another, often some sort of general release is signed. And I can easily see where there could be a dispute about, oh, compensation for unused leave or something like that under what's clearly an ERISA plan where there'd be a release. The trial court itself referred to this release, and just to back up, this is a suit about enforcing that release. This is a suit about the enforcement of that contract. The trial court referred to it as a standard release form. Now there's no evidence in the record that would suggest that this is a standard release form, and in fact it's not. This is a very extensive settlement. I always kind of laugh when some... I think most lawyers do when somebody tells them it's just a standard form. This is an extensive release form, and... But still, why is a release inconsistent with an ERISA plan? Let's take the clearest possible ERISA plan. It's a retirement plan. And one person says my pension should be $8,300 a month, and the company says, no, your pension should be $7,200 a month. And they agree it's going to be something in between, and there's a release sign. That doesn't prevent the pension plan from being an ERISA plan. So two different things. Was the release preceded by an ERISA plan? And when the release was signed, did it fundamentally change the nature of the parties? And in this case, one could argue, as Lockheed has, that the ERISA plan was created to implement these processes, and that there was a discretionary process of selection. I thought the question was whether the RIF plan is an ERISA plan. Have I got it mixed up? No. So the... Is there an employee separation program? It's a separation program, which Lockheed wants to characterize as a severance program in essence. But once the release is executed, the language of the release fundamentally changes the nature of the parties. ERISA is about fiduciary duty, and there is no fiduciary duty between a creditor and a debtor on a release. So while one could argue that prior to the execution of the release, this is an ERISA plan... I see. So you're saying the employee separation plan, the RIF plan, reduction in force, that may or may not be an ERISA plan. It doesn't matter. What matters is the release is what the payment is made under. Exactly. Because the release is a standalone contract that provides for its own means of enforcement. It stands independent from the ERISA plan. It is in essence the concluding statement of the ERISA plan. And what it does is at the time of the execution of that release, it fundamentally changes the nature of and the relationship of these parties. I understand that argument from your brief, but it seems to me that the release does more than that. It has contingency in it. You've got to return things to the company. If you don't, why the release form isn't there? Counsel makes, in his brief, you obviously make the argument that it's part of the plan. And the release expressly incorporates the plan. It's referred to, as he says in his brief, I didn't count it, 23 times it's referred to. So his argument is they're together. You can't separate them out. If that's right, how would you argue your case? That's inconsistent with the language of the release. It's directly inconsistent with the language of the release. What's inconsistent with it? That they're together? That they're together. Because the release is in and of itself an enforceable contract. And let me just say that the release releases ERISA claims. Doesn't it, as I remember, there's this decision by Justice O'Connor on behalf of the Supreme Court that interprets the related to language very, very broadly. And it's hard to say that the release isn't related to the RIF plan. One of the definitions of related to is whether or not it stands independent from. And in this case, what Lockheed chose to do was to actually have the employee, well this, I don't want to say this is what they chose to do, the entire import of this plan was to extract a release of claims from employees that were being or were going to be laid off. And they happened to be, generally speaking, older employees, senior employment. They were de-layering. And what Lockheed wanted to do was to avoid class action claims, age discrimination claims. And they did it by a resolution. And I'll read the court the specific language of the resolution. This is at excerpts at page 40. Mr. Lucas explained that in order to receive benefits under the plan, all employees must voluntarily submit a release of claims against the corporation. In the plan document itself, at excerpts 46, provided that the eligible employee returns and does not revoke the release, the amount payable will be paid in a lump sum. The contract itself, your honor, the release of claims, entitled release of claims, has two specific sections of payout where the only, the only qualification for the employment, for the lump sum payment is execution in return of the release. At excerpts 146, section B, if I voluntarily elect to sign this release, the corporation pursuant to the plan will pay me the termination benefit. Section C, in exchange for the payment of the termination benefit, I voluntarily and knowingly sign this release. The last page, 152, subsection F, I understand that under the terms of this plan, I will receive the termination benefit in a lump sum within 90 days of the corporation's receipt of this signed release. So in spite of these ongoing references to the plan, the plan, what the employee is being given is if you sign this release, you will receive the termination benefit, the lump sum payment. And within the release, doesn't the release say if you don't get the benefit, it's not effective? I think what the court's referring to is there's a provision in there that says that the employer can revoke or something before the termination benefit comes due. And this is an issue here. Because what happened in this case is that the release was returned. Mr. Edwards gave the release back to Lockheed, which triggered the now debtor corporation, because that's what the release is, it's a creditor-debtor contract. It triggers Lockheed's obligation to pay. Lockheed can move within that payment period, because payment's not due for 90 days. But once the payment is due, it has to be paid. So what Lockheed did in this instance is after the release was returned and these parties went into a debtor-creditor relationship by the terms of the plan, Lockheed simply let the date come and go and didn't do anything. It wasn't until months later that Lockheed then said, oh, we've decided now that we're going to keep your release, but you're not going to be paid. So if I've answered the court's question, I think the point is this. If we rule that this is an ERISA plan on the grounds that there's no ongoing, that there was an ongoing administrative scheme, in other words, if we reject your argument that the release controls, then wouldn't your client who was excluded from the VEST program, maybe after first being put into it, but then they changed their mind, wouldn't he still be able to assert claims that are not subject to the release? The release is comprehensive and in signing the release, Mr. Edwards released literally every claim out there with the exception of the right to enforce the release. So the release itself creates its own enforcement mechanism and it does away with any other claims, including ERISA claims. The release waives claims under ERISA, and it creates a relationship between Mr. Edwards and Lockheed that is now debtor-creditor. Your argument depends upon that severance. Under Fullerity, it makes clear that whether it implicates an ongoing administrative scheme, it's within the plan. What counsel argues is these are all together because there are contingencies, he had to return certain things, et cetera, and so he says there's one plan. Your argument depends on carving out this part of these proceedings that are going on with the person retiring, and just relying on that, making it a debtor-creditor situation. Is that a fair analysis? What I'm saying is that in none of the precedent that this court has, for Hell Passed. What I'm saying is you've got to put it into context. This didn't come out of the blue that all of a sudden they're going to pay him some money for leaving. There's a plan that's involved, and he's going to argue, I assume, that it's an administrative thing that has to be done under the Fullerity interpretation of what a plan is. So it didn't come out of the blue, Your Honor, because it was a plan for a settlement of claims. The purpose behind this plan is not an employee welfare benefit plan. It's to settle claims. That's true, but there's a continuing responsibility. For example, if your client comes back and works for the company again, all of a sudden there's a new process that's involved. There's things that go on continually, and under Fullerity it seems to me that you've got at least show us why that doesn't apply. The things that go on continually go on only before the release is executed. Once the release is executed, Lockheed has one duty, and that is... Suppose he comes back and he's re-employed. Well that's not a part of the contract. Oh, but it's part of the plan. He has to give the money back if he comes back and he's re-employed, doesn't he? Well the nature of our action is to enforce a release that Lockheed breached. I don't think that answered my question. The release of claims puts these parties in a relationship of debtor-creditor. You said that before. No longer employer-employee. It isn't a debtor-creditor if the plan requires him to pay back the money if he becomes employed with the company again. There's a continuation that's going on. The release of claims... First of all, ERISA deals with... When we talk about continuing administrative processes, we're talking about processes that are performed in a fiduciary capacity. That's what ERISA is. ERISA regulates fiduciary duty to ensure that an employee's expectancy of benefits that generally have been accumulated over time are going to be managed in a way that that employee's expectancy is not going to be defeated. In other words, ERISA is there to protect a fund, an accumulated fund or a plan designed to benefit this employee for which the employee has an expectancy to ensure that those funds will be there when the triggering event occurs. It's all about fiduciary duty. When a release of claims is done, there is no more fiduciary duty. There is if he comes back. If he comes back and works, he's going to have to give the money back to the company. That's a continuing obligation. Everything has not been cut off. There's a continuing obligation to pay back the money if he gets reemployed. I don't see that in the release, Your Honor. I don't see that language in the release. We have to segregate or at least... In the release, it's in what your oppositions are, it's all together, it's part of the plan. But I recognize that that's their position. But they've used... This is Lockheed. This is very sophisticated corporations. We've been talking about sophisticated parties earlier. They chose to have an employee sign a release of claims in order to get money. That's a settlement. If you release all of your claims, we'll give you this money. That is a settlement. And only if you release all of your claims will we give you this money. That is a claim settlement. That is not a welfare plan. In fact, I would argue that what that is is an employer benefit plan. And how would you fit in that he has to pay back if he gets reemployed? I don't see that in the release. I guess I'm a little confused by the question because the whole grabberman... There's something... I'm sorry, this is a really elementary question, but it's something that just keeps slipping away from me. Let's assume that the RIF plan is an ERISA plan. Let's assume, for purposes of discussion, that the release agreement is related to an ERISA plan. Let's assume that because of the continuing obligations that the ERISA plan removal was correct and there's ERISA preemption. Assuming all that, I'm still missing a step here. I'm thinking, let's take your most ordinary ERISA medical plan where the employee gets a medical treatment, the plan disputes whether it's covered. They fight it out. They go through the ERISA administrative procedure within the plan and they reach a conclusion that ERISA will cover all the medical expenses except for the chiropractor or something like that. The plan still has to pay the money. And there may be some deference to the administrative decision or not, depending on whether there's a conflict of interest. And the deference may be qualified because of a conflict of interest, but they still have to pay the money for all the medical expenses except the chiropractor once they've resolved their dispute that way. I don't quite understand how cheating on the expense account means they don't have to pay anything under the separation agreement and I don't understand why it matters whether it's related to an ERISA plan. I hear a lot of questions within that question, but I think my answer to it would go something like this. Nowhere in that scenario is there a release of claims. When the court is talking about medical payments as an example, that's a classic ERISA plan. This is an ongoing obligation to cover- I asked you to assume for the purposes of discussion. But in this case, we do not have that kind of a plan. You can have an undisputed ERISA plan and they still have to pay the money. That's why I don't get why- Because in this instance, by the strict language of the contract, which is what is being enforced, this is no longer an ERISA relationship between the parties. When the release of claims is executed, this is no longer employer-employee. That is all in the past. Upon the execution of the release, Lockheed has one obligation and it is to make the payment, one obligation. And Brad Edwards becomes a creditor of Lockheed Corporation and specifically- I heard you explain that before. It's just, I was kind of throwing you a softball. What if you lose on all the issues we've discussed, wouldn't you still win? But you didn't pick up on it. Well, what I'm saying- Well, now that you've already answered. My position on this is that, in essence, what the court is saying is, acknowledge that there's an ERISA plan, fine. And I've said that from the outset, that if Lockheed wants to call it an ERISA plan, let's call it an ERISA plan. But once you have a release of claims, it seems like the court is focusing on the plan as opposed to the actual contract, the sole written contract between the parties. This is the contract between Brad Edwards and Lockheed. And it is nothing more than, if you, Mr. Edwards, execute this release of claims, you work to this date and you go away, we will pay you this money. Mr. Edwards executed that release of claims. He performed fully. And now it is Lockheed's responsibility under the contract, not under the ERISA plan, not under the ERISA plan. It is Lockheed's responsibility under the contract to make that payment in 90 days. Okay, counsel, although our questions have taken you there, you're more than five minutes over your- Oh, I'm sorry, Your Honor, I thought it was going down. No, that's okay. That's what I tried to explain at the end, that when that red light's on, the time isn't remaining, it's time you're over. You know, it's a difficult case, and I'm gonna give you two minutes of rebuttal time after we hear from your opponent. Thank you, Your Honor. But I think we understand your argument for now. Now for Lockheed, we have Patrick Michael Madden, correct? Thank you, Your Honors. Patrick Madden at K&L Gates on behalf of Lockheed Martin Corporation. I really want to get to the issues that really come into play with ERISA preemption, Velarde and Bogue, and the juxtaposition of the two. But I want to address what Mr. Edwards' counsel first really focused on in their reply brief on appeal, an issue that wasn't addressed at all at the trial court, in which she first focused here, and that is the question of whether or not signing a release somehow removes everything from ERISA, which seems to be her argument. Talked about it for four pages in a reply brief. In fact, on page four, the reply says, there is no precedent characterizing a plan requiring a release of claims as an ERISA plan. Counsel, let's assume for purposes of discussion that your opposing counsel is wrong on all that, and that the release is related to an ERISA plan. I voiced to your opposing counsel an elementary question I had, and I must just be missing something here, because I want to pose the same question to you. If we assume that it's an ERISA plan, the release is related to an ERISA plan, everything, still, they made a deal, here's your termination benefit. They subsequently determined that he cheated on his expense account. Let's assume that, for purposes of discussion. I look at section seven of their deal, and it says that he has to maintain satisfactory work performance until the termination date. He was terminated pursuant to his election, and nothing happened for the 90 days, and then subsequently they figure out, because he claimed $4,700 in additional expense account money, that he cheated on his expense account. I don't quite get why, whether it's an ERISA plan or not, whether it's preempted, so removal to federal court is proper or not, I still don't get why he wouldn't get the termination benefit minus however much he shouldn't have taken on his expense account. Your Honor, that would be an ERISA claim, and an ERISA question, and it's actually an appropriate question to pose. It was never presented to the district court, because plaintiffs refused to bring an ERISA claim. I don't see why the district court would grant summary judgment for all parties and all claims, so that it would be a final judgment, where there's no resolution of whether this fellow is entitled to some money under the termination agreement. Because there wasn't, the only claim. There was a lot of stuff about standing, and I didn't understand what the judge meant, because it looks like it's not really a standing question, it looks like it's a whether a cause of action has been stated question. I just don't know where the money went. You can't decide years later that somebody didn't quit after all, he was fired when he wasn't. Why do they get to keep all the money? Well, Your Honor, I guess. Even assuming it's an ERISA plan. ERISA plan doesn't mean you don't get anything but what we give you, it just means there's an administrative review process, and varying degrees of deference to the administrative review process. That's correct, Your Honor. And so, here that wasn't gone through, correct? That wasn't addressed because there was no ERISA claim asserted in the case. And in fact, this court has addressed those types of issues before, where a plaintiff's attorney chooses not to pursue ERISA claims, chooses to pursue contract claims instead. And in those circumstances, at that point, the district court has to address the claims that are asserted before it. She didn't propose to amend her complaint while reserving her position that it was not, in fact, an ERISA? She did not propose to amend, to add an ERISA claim prior to bringing this- You're just making an ERISA claim for the money instead of a contract claim for the money. You didn't finish your sentence. Prior to what? Prior to bringing any lawsuit, Mr. Edwards was informed that this was an ERISA issue. He could bring a claim under Section 502. I don't care about that. I mean, it could have been amended after summary judgment. The judge says, nope, this is an ERISA claim. It's preempted. She'd still be entitled, or he'd still be entitled to amend to say that while reserving my position that this is not, in fact, an ERISA claim, I'm making an ERISA claim for the, I don't know, whatever it was, $220,000, my original settlement minus the cheating on the expense account. He could have done that. He, in his opinion, makes it very clear. He cars out and says that Mr. Edwards has not brought an ERISA claim. He does that because we informed, after Mr. Edwards was informed, Ms. Schultz was informed that this was an ERISA issue. She nevertheless brought a contract claim. Nobody informs anybody until a court informs, actually. It really doesn't matter whether Lockheed and Lockheed's lawyer informed her. I mean, they can inform her you're not entitled to assent, and that doesn't make it the truth. Correct, Your Honor. But ultimately, Judge Rice noted in his opinion that Mr. Edwards did not pursue an ERISA claim, did not ask to pursue an ERISA claim. And so we don't get to those questions because there's at some point where a district judge has to have a latitude to address what's before the court. Now, going to the underlying question, although you may be correct in terms of certain vested benefits that run over time where someone builds up an accrual of benefits, this was a window opportunity, what sometimes, depending on circumstances, might be called a top hat program, where it was a voluntary early retirement program with an amount offered based on certain conditions. And one of those conditions was to perform fully and satisfactorily through the termination date. Mr. Edwards was informed within weeks of leaving that there was an investigation concerning his expense account handling. It wasn't something that was done far after. So what you're saying is he wasn't entitled to the money because he cheated on his expense account before the termination date. Correct. And they didn't catch it till after. Correct. I mean, if the court adopts some other approach, someone could abscond with millions of dollars the day before termination, sign a release, and then say, no, you have to give me my benefits because you didn't catch me in time. You're saying that's why he didn't bring in a RISA claim for the money. Well, they want to carve out this release as independent because they didn't want to get into the underlying facts as to his misappropriation of funds. And so there was no investigation of that, and the court didn't have to address those issues. The court was addressing the RISA preemption issue. Counsel, let me ask you a question, if I may, about the release. Am I correct that given the fact that Lockheed, after initially going forward on the program, and then later tossing him out of it, let's say, that Lockheed has not released him? He has not released Lockheed? I mean, the issue, I think if you're asking about the enforceability or the effect of the release. Is the release not effective by its terms because he wasn't paid the money? Well, the release doesn't address that issue. The release simply provides a release, and that issue wasn't, the enforceability of the release was never addressed or raised at the trial level and before the district court. I think that in a subsequent proceeding, if Mr. Edwards challenged the validity of the release, I believe. Let's say Mr. Edwards loses this case and then sues Lockheed for age discrimination. That's an example. Subject to limitations, and whether there's a statutory limitations problem, and whether it's total. Total, could he assert such a claim? Your Honor, you picked the most difficult of the claims because I think under the ADEA, you have an especially troubling issue because there has to be some consideration. Judge Wallace noted that there are provisions where you might have to return the money under the release. And I don't know that the Ninth Circuit has addressed the question of whether or not a release that initially is provided and has consideration attached to it is voidable if the consideration has to be returned based on contingencies built into the release or into an ERISA plan. That wasn't raised below, and so I can understand if your client maybe hasn't been confronted with that issue and you might not be prepared to give an off-the-cuff on it. I certainly have thought about it, Your Honor. Have you heard anything? Have they actually ever sent him a check? I thought what happened is he didn't get his money because they caught him cheating on his success account. They did not send him a check. That's correct, Your Honor. He wouldn't have to return any money. My question went to if Mr. Edwards brought a subsequent claim against Lockheed for age discrimination or some other claim, not the current claim based on contractual content of the release, but a different claim and subject to limitations. If limitations issues could be either weren't right and run or were told by something else, would the release be effective to mean that he can't bring that claim? I understood your answer to be you're not sure what the answer is as to whether the release would be voidable because that wasn't raised below. Correct, Your Honor, and I think it would be, the release would not be void on its face. It would be an affirmative defense if Lockheed raised the release as a defense to a claim and then the plaintiff would have, Mr. Edwards would then have to argue that it was a void or voidable at that point. He would make his age discrimination claim. You would have a defense that the claim was released and he would counter the defense by claiming there was no consideration for the release because you didn't pay the money that was agreed to be paid. And under the ADEA, I think that would be the process that you would go through. When the ADEA has special considerations, it might not go to certain other claims if you were to walk through that process, but none of that was presented at the district court or addressed by the district court. And so I'm. That's not really before us now, but that was a question on my mind as to whether other claims could be asserted if we accept your client's position on preemption. And Your Honor, I. I'd be amazed if you'd have a release. I mean, the ordinary car accident case where the insurance company gets a release in exchange for whatever they've settled on paying. If they don't send the check, I don't think they have a release. That, Your Honor, I think that would be a good argument to address at the district court level. And I think that would be an argument that certainly a court would need to address at the first instance. I think we could present arguments counter to that, but I really am not prepared to address it. That sounds fair enough. I took up a lot of your time with my off agenda issues. If you want a little extra time, go ahead. And we're going to give counsel for appellant time to have rebuttal. Thank you, Your Honor. I did want to go back to that first issue on the release, being part of ERISA or not, just so the record is clear on this, because it was not sufficiently addressed in our brief. We didn't anticipate that that was an issue. But I did want to call the court's attention to a number of decisions. And ironically, most important was the Lockheed case from 1996 in Lockheed Corporation versus Spink. It's 517 U.S. 882, where the Supreme Court unanimously held that ERISA allows plans to condition benefits on release of claims. Beyond that, the Ninth Circuit's addressed that issue a couple of times. First, in Burry versus Pacific Gas, as 159 Fed Third 388. And the second time in 2010 in Slumer versus Verity, 606 Fed Third 584, where the Ninth Circuit stated the Supreme Court has confirmed that an employer may, without violating ERISA, require an employee to cross a picket line, retire early, or execute a release of claims against the employer in connection with an ERISA plan. It is entirely appropriate to build a release into the plan itself. And if the court reviews the plan, the release is one of many contingencies built into the plan. It is not the sole contingency. As Justice Wallace noted, or Judge Wallace noted, both the plan and the release have provisions that allow for the return of funds, even if they've been paid out after the termination date. The last thing I wanted to point out, and this gets to both the question of fully performing and the question of kind of retroactively determining that the termination was for cause versus not for cause. The plan actually anticipates that the for cause determination might be made after the person has left employment. The specific language in the plan provides that if the administrator finds that the employee termination was for cause, and it says, and this is a quote, the employee's termination of employment under the terms of this plan will not be considered to have occurred. So it's talking retroactively, kind of retrospectively. It's kind of funny to me. I suspect because any large employer with a thick employment manual can find some violation of the manual in some respect, probably for every employee it has. And what that means to me is that everybody's deal with Lockheed would be voidable at the will of Lockheed. Well, your honor, I think that would be where a court reviews the judgment of the committee. This guy's expense account deal, some of it was kind of subtle. He's assigned to work in Chantilly and he sleeps overnight in,
judges: Wallace, Kleinfeld and Gould